JOHN W. PIERCE, PLAINTIFF IN ERROR, v. MARGARET E. OARD, DEFENDANT IN ERROR.

1. Libel and Slander: PRIVILEGED COMMUNICATIONS. Every person having reasonable and probable cause to believe that a crime has been committed, has the right to communicate his suspicion to a magistrate having jurisdiction of the case; but the existence of reasonable and probable cause for the suspicion is essential to make the communication privileged.

2. ———: ———. One P., a merchant, applied to a justice of the peace for a warrant against one O., a married woman, on the ground that she had taken a pair of overshoes of the value of $1.15 from his store. The justice assured P. that he was acquainted with O., and that she would not commit the act complained of, and that there was a mistake, and offered to pay for the overshoes, and refused to issue a warrant. A few hours afterward, P. again applied to the justice for a warrant, saying, in effect, that O. had stolen three pairs of shoes from his store, and he could prove it. The justice again refused to issue a warrant, saying, in effect, that P. was mistaken. On the next day, P., with a constable, went to the residence of O., without process, and in the presence of her husband and children charged Mrs. O. with the larceny of the shoes, and under threats of arrest procured payment for the shoes, and one dollar and a half for costs. There was of testimony tending to show that Mrs. O. had paid for the shoes when they were procured. *Held*, That the communications of P. were not privileged, and that a verdict against him for $325 was fully sustained by the evidence.

ERROR to the district court for Buffalo county. Tried below before HAMER, J.

*Dilworth, Smith & Dilworth,* for plaintiff in error. Words must be proved exactly as alleged. Variance is fatal. *Birch v. Benton,* 26 Mo., 133. *Horton v. Reavis,* 2 Murphy, 380. *Winter v. Donovan,* 8 Gill, 370. Privileged communications. Townshend Libel, 380. *Torrey v. Field,* 10 Vermont, 353. *Hill v. Miles,* 9 N. H., 9. *Wyatt v. Buell,* 47 Cal., 624. Cooley Torts, 214. *Bailey v. Dodge,* 28 Kan., 81.

*A. H. Connor* and *J. M. Stewart,* for defendant in error, cited: Ogders Libel, 187. *Eames v. Whittaker,* 123 Mass., 342. *Brow v. Hathaway,* 13 Allen, 242. *Briggs v. Byrd,* 12 Ired., 377. *Thorn v. Moser,* 1 Denio, 488. *Clark v. Brown,* 116 Mass., 507.

MAXWELL, J.

This action was brought by the defendant in error against the plaintiff in error in the district court of Buffalo county, it being alleged in the petition that, on the 27th day of November, 1884, said Pierce, in the presence and hearing of divers persons, maliciously spoke and published of and concerning her, defendant in error, the false and malicious words, to-wit: "She," meaning the plaintiff, "stole a pair of shoes out of my store, and I can prove it."

And for a second cause of action, that, on the 27th day of November, 1884, said plaintiff in error, in conversation with divers persons, maliciously and falsely spoke and published of and concerning said plaintiff (defendant in error) the other false and malicious words: "She," meaning the said plaintiff, "stole three pairs of shoes out of my store, and I can prove it, and she carried them out under her shawl," by which she has sustained damage in her reputation in the sum of $5,000.

In December, 1885, defendant, by leave of court, filed an amended answer, alleging that, on the 26th of November, 1885, he was engaged in the mercantile business in the town of Gibbon, Buffalo county, Nebraska, and that on that day he missed from his store some shoes, which he had not sold, and having good reason to believe that Margaret Oard, the defendant in error, had wrongfully taken the shoes missed by him, he, for the purpose of protecting his property and bringing to justice the parties who had taken the shoes from him, and in good faith, made the following complaint in writing:

"STATE OF NEBRASKA, ⎫
BUFFALO COUNTY.     ⎬

" Before me, Wm. L. Beatty, justice of the peace in and for said county, personally came J. W. Pierce, who, being duly sworn according to law, deposes and saith, that on or about the 26th day of November, 1884, at and in the county of Buffalo and state of Nebraska, one Margaret Oard, then and there being, did unlawfully steal, take, and carry away three pairs of rubbers, of the value of three dollars and forty-five cents, said rubbers then and there being the property of said affiant, J. W. Pierce, and further deponent saith not.

" Subscribed in my presence and sworn to before me this ...... day of ........., 188..."

Which complaint he presented to William Beatty, a justice of the peace of Buffalo county, and desired said justice to swear him to said complaint and issue a warrant as required by law, which said justice then and there refused to do. That he went to Martin Oard's, on November 28th, and it was then and there agreed that Mrs. Oard was to pay for one pair of shoes and part of the costs, which was then and there done, and in consideration of which it was then and there agreed that all matters between the parties were then and there fully settled. And he alleges that all conversation he had of the Oards was with

officers of the law, and for the purpose of protecting his rights, and investigating and determining who had taken his property, and bringing the proper parties to justice. And he denies each and every other allegation in the petition not heretofore admitted.

Mrs. Oard filed a reply, alleging that, on the 28th of November, 1884, the said John Pierce and one Wheeler, who was acting constable, came to her house and stated that he had a warrant for the arrest of plaintiff for stealing said shoes, and the costs of procuring such warrant; and that she then and there stated that she did not owe him anything for the shoes, and then and there refused to pay for the shoes and the costs of said warrant. And the said Wheeler, who was acting for the defendant, took plaintiff aside and urged her to pay said amount, and that upon the advice of her husband she did pay for one pair of shoes, and agreed to pay one-half the cost of the alleged warrant, and that said payments were made as above set forth and not otherwise. Further, that on November 28th, nor at any other time, had said John W. Pierce procured a writ for the arrest of plaintiff; and she denies that it was agreed between her and said Pierce that all matters and controversies between the parties was then to be fully settled; and denies that all conversation of said Pierce was with officers of the law, and for the purpose of protecting his property and rights, and investigating who had taken his property; and further replying, denies each and every allegation in defendant's answer not admitted or denied.

The testimony tends to show that, on the evening of the 27th of November, 1884, Pierce called on Col. Beatty, a justice of the peace at Gibbon, to procure a warrant for the arrest of defendant in error. The justice said to him: "Why, you are mistaken. She never took your shoes. You are certainly mistaken." He said, "Well, he did not say she stole them, but said he was satisfied she took the shoes." The justice assured him that he was mistaken,

and offered to pay the price of the shoes, $1.15, but Pierce would not take the money. He said, "He wanted a warrant." The justice refused to issue a warrant at that time, but promised to go and see the defendant, and inquire as to the facts in the case. The justice seems to have called at the house of the defendant in error, and returned to his own home about 9 o'clock that night. Shortly afterwards, Mr. Pierce called, and shaking some papers in his hand, said, "I want a warrant right away." He said, "She has stolen three pairs of shoes out of my store, and I can prove it." The justice, however, refused to issue a warrant. On the next morning Mr. Pierce and a Mr. Wheeler, a constable, went to the home of the defendant in error, and demanded a settlement. The husband of the defendant in error testifies that, "Pierce first wanted $20; then he came down to $5; then to $3, and he would pay one-half of the costs if I would the other half."

The testimony tends to show that Pierce and the constable professed to have a warrant for the arrest of Mrs. Oard, or, as some of the witnesses testify, they said they were about to procure one, and that, under threats of this kind, they induced a settlement by paying for the shoes and one-half of certain alleged costs. The testimony clearly shows that no legal costs had been incurred, as no complaint had been filed, nor warrant issued. There is some conflict in the testimony as to the fact whether the defendant in error had paid for the shoes in question or not. Pierce, upon going to the home of the defendant, as above stated, to effect a compromise, claimed on investigation but one pair of the shoes as having been taken from his store. The defendant in error testifies that she purchased and paid for the shoes in controversy; and in this she is corroborated by certain circumstances, such as the lack of concealment, the fact that she stated on the succeeding day to her neighbors that she had purchased said shoes of Mr. Pierce for the sum of $1\frac{15}{100}$, also the possession of

sufficient money to pay for all the goods purchased from Pierce at the time of said purchase. In addition to these facts, it is clearly shown that she had previously enjoyed the confidence and respect of her acquaintances, and that Mr. Pierce afterwards was willing to sell her goods on credit.

The plaintiff in error contends that the statements made to the justice were privileged communications, and that therefore an action will not lie.

There is no doubt of the rule, that every person having reasonable and probable ground for believing that a crime has been committed, has the right to communicate his suspicion to a magistrate having jurisdiction of the offense. To create this right, however, the existence of reasonable and probable cause is absolutely essential. Townshend on Slander and Libel, section 220, and cases cited. In our view, the proof fails to show the existence of reasonable and probable cause against the defendant in error, and therefore the plaintiff in error is not protected. While in general the mere utterance of slanderous words constitutes a cause of action, yet to this rule there are well-known exceptions growing out of the occasion of speaking the words, and the attendant circumstances, and which may require the plaintiff, in order to recover, to prove the existence of malice on the part of the defendant. Thus, complaints made and charges preferred, in the proper mode against public officers or private agents, are presumptively free from malice; and, indeed, whenever a person speaks in the performance of any duty, legal or moral, public or private, or in the assertion of his own rights, or to vindicate or protect his interests, no action will lie against him without proving malice. *Thorne v. Moser*, 1 Denio, 492, 493. A party cannot willfully make a charge of this kind, however, without having reasonable and probable grounds for believing that a crime has been committed. There is no justification for the course pursued by the

plaintiff in error with the constable, and by threats, and without any legal process, procuring an alleged settlement for the shoes.

No person has a right to charge another with the commission of a crime, unless the facts warrant the charge. Neither can one be permitted to resort to charges of the commission of an offense and threats of arrest, as a means of obtaining money. The law has pointed out the proper mode of procedure to collect debts, and that must be followed. The plaintiff in error admits that he was mistaken in his charge as to two pairs of the shoes, and it is very probable that his credulity, or other infirmity, led him into a mistake as to the other pair. In any event, he was not warranted in the course he pursued. We see no error in the instructions given and refused. The verdict in this case was for $325, and was fully justified by the evidence. There is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.