GERALD D. DeCARNELLE, APPELLANT AND CROSS-RESPONDENT, v. BRUCE C. GUIMONT AND BEVERLY A. GUIMONT, RESPONDENTS AND CROSS-APPELLANTS.

No. 15856

August 27, 1985                                        705 P.2d 650

---

*Davenport & Perry,* Reno, for Appellant and Cross-Respondent.

*Sinai & Schroeder,* Reno, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

This case involves an agreement between two parties for the propagation of birds of prey. In the spring of 1977, appellant/cross-respondent Gerald DeCarnelle met respondent/cross-appellant Bruce Guimont. Sharing an interest in birds of prey (also known as raptors), Guimont and DeCarnelle agreed to join forces for the propagation of these birds. In August, 1977, Guimont and his wife Beverly sold their Sun Valley, Nevada residence and purchased a 40-acre parcel of land in the Palomino Valley for $18,250.

The parties agreed that DeCarnelle, having no carpentry skills, would provide all the money and birds necessary for the project while Guimont, an experienced carpenter, would invest all the necessary time and labor into building a propagation facility.

Guimont constructed the facility to near completion. He also built a home on the same parcel of land. His family moved into

the home in 1979. Meanwhile, DeCarnelle prepared two documents which were used to acquire raptor propagation licenses. At the time of their dealings, it was (and it continues to be) a crime to sell birds of prey. It was not, however, unlawful to *raise* these birds. The testimony of both parties established that the parties hoped to make "a lot of money" from this project by "corner-[ing] the market" when the sale of raptors was legalized.[1]

By August, 1979, there were between 10 and 18 birds in the facility, but the parties had not been successful in mating any of them. Guimont contacted DeCarnelle and informed him that he was dissatisfied with the project and that he intended to sell the house and property.

The Guimonts listed their house and property for sale and eventually accepted a bid of $129,000. That sales transaction was scheduled to close on April 21, 1980. On April 15, 1980, however, DeCarnelle filed a *lis pendens* on the property. This prevented the sale from occurring. The Guimonts hired an attorney, and the *lis pendens* was cancelled on May 2, 1980. On May 5, 1980, the escrow on the sale closed, and the Guimonts sold the property for $129,000.

DeCarnelle filed an action against the Guimonts for breach of contract. The Guimonts counterclaimed against DeCarnelle for slander of title as a result of the *lis pendens* on the property. The district court found the contract illegal and unenforceable and granted judgment on the claim for the Guimonts. The court also held that DeCarnelle was liable for slander of title and awarded special damages in the amount of attorney's fees incurred in the removal of the *lis pendens*. This appeal and cross-appeal followed.

## Illegality of the Contract

DeCarnelle asserts that the district court erred in finding the contract illegal. Our review of the record does not support a legal conclusion that the contract of the parties' was illegal. Instead of finding the contract illegal, the district court should have found that no contract exists between the parties. The district court found a contract in the two documents DeCarnelle prepared for use in acquiring raptors. Our review of these documents and of the record as a whole leads us to conclude that no contract was created by these documents, or otherwise, between the parties. Therefore, although the district court was correct in refusing to award damages for breach of contract, it did not state non-existence of a contract as the reason. This court need not reverse

---

[1]DeCarnelle had been officially (and apparently incorrectly) informed that a change in the laws regarding the sale of raptors was possible.

a case on this basis, so long as the result is correct. Hotel Riviera v. Torres, 97 Nev. 399, 632 P.2d 1155 (1981). Therefore, the judgment of the district court finding the agreement between the parties unenforceable is affirmed.

### Slander of Title

DeCarnelle next argues that the court erred in finding him liable for slander of title. The district court found that the *lis pendens* filed by DeCarnelle against the Guimonts' property was "improperly and unjustifiably recorded" and that "slander of title occurred."

The requisites to an action for slander of title are that "the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct result of their having been spoken." Rowland v. Lepire, 99 Nev. 308, 313, 662 P.2d 1332, 1335 (1983). DeCarnelle testified that he had no interest in the real property. Since the application for the *lis pendens* stated that DeCarnelle had such an interest, that statement was false. Second, the evidence established that the Guimonts sustained special damage in the amount of attorney's fees to remove the *lis pendens*. The evidence, however, fails to establish that DeCarnelle acted with malice. In the absence of evidence of malice, the record is insufficient to support the judgment on the slander of title claim. Therefore, the award of damages for slander of title was in error.[2]

Accordingly, judgment in favor of the Guimonts for slander of title is reversed, and judgment in favor of DeCarnelle on the breach of contract is affirmed.

---

[2]In their cross-appeal the Guimonts claim the court erred in denying them general and punitive damages on the slander claim. Because we hold the evidence is insufficient to support a claim for slander of title, the Guimonts' argument is without merit.